UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HUDDLESTUN, on behalf of himself and all others similarly situated, and ROBERT BENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARRISON GLOBAL, LLC, doing business as BOSTON COACH, MTG ACQUISITIONS, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 17-cv-0253 DMS (WVG)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Pending before the Court is Plaintiffs Mark Huddlestun and Robert Benson's motion for preliminary approval of class action settlement. Defendants Harrison Global, LLC, doing business as Boston Coach, and MTG Acquisitions, LLC filed a non-opposition. For the following reasons, the Court grants Plaintiffs' motion.

/ / /

/ / /

– 1 –  17-cv-0253 DMS (WVG)

# I.
# BACKGROUND

Plaintiffs bring a wage and hour class action suit on behalf of current and former employees of Defendants. Defendants are limited liability corporations that operate a limousine transportation service. (First Amended Complaint ("FAC") ¶¶ 2, 5.) Plaintiffs and the putative Class Members are current and former employees of Defendants who worked as chauffeurs in San Francisco between March 14, 2014 and January 26, 2018, Los Angeles between March 14, 2014 and November 16, 2017, and San Diego between October 1, 2015 and November 17, 2017. (*Id.* ¶ 10; Declaration of Scott Cole ("Cole Decl.") ¶ 32, Ex. C ("Settlement Agreement").)

Plaintiffs allege the following claims for relief: (1) failure to pay overtime compensation, in violation of Cal. Labor Code §§ 201–03, 226, 510, 558, 1194, and 1197 and the applicable IWC Wage Order, (2) failure to provide meal and rest periods, in violation of Cal. Labor Code §§ 200, 500, 512, and 1198 and the applicable IWC Wage Order, (3) failure to pay minimum, hourly, and overtime wages, in violation of Cal. Labor Code §§ 201–02, 223, and 1194, (4) failure to pay final wages, in violation of Cal. Labor Code §§ 201–02, (5) failure to provide timely and accurate wage statements, in violation of Cal. Labor Code § 226, (6) unlawful, unfair, and fraudulent business practices, in violation of Cal. Bus. & Prof. Code § 17200 et seq., and (7) civil penalties under the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699 et seq.

The parties participated in a mediation before mediator Michael Dickstein on September 5, 2017. (Mem. of P. & A. in Supp. of Mot. at 3.) The mediation was successful and resulted in a settlement. (*Id.*) The proposed Settlement Agreement provides for a Gross Settlement Fund of $1,050,000. (Settlement Agreement ¶ 4.)

The Class Members will be allocated a share of the Net Settlement Fund based on the number of workweeks they worked for Defendants during the relevant time period. (*Id.* ¶¶ 21–22.) The Net Settlement Fund is the remaining amount in the Gross Settlement fund after deducting the following: (1) Plaintiffs' attorneys' fees in an amount up to 28% of the Fund, (2) actual costs not to exceed $20,000, (3) an incentive award to Plaintiffs in the amount of $5,000 each, (4) the costs of the Settlement Administrator up to a maximum of $10,000, and (5) a payment to the Labor and Workforce Development Agency ("LWDA") for release of PAGA claims in the amount of $6,666, 75% of which will be remitted to the LWDA and 25% of which will become part of the Net Settlement Fund. (*Id.*)

Pursuant to the Settlement Agreement, Defendants will give the Settlement Administrator the Class Members' names, social security numbers, last known addresses, home telephone number, and e-mail addresses, as well as the dates of service and the number of workweeks during the Settlement Period. (Settlement Agreement ¶ 28.) Within 10 business days of the entry of an order granting this motion, the Settlement Administrator will mail a Class Notice Package, consisting of notice of settlement and claim form,[1] via first class mail to the Class Members. (*Id.* ¶¶ 27, 29.) If any Class Notice Package sent to a Class Member is returned, the Settlement Administrator will search for that Class Member's more current address and re-mail the Package. (*Id.* ¶ 29.) Class Members who desire to be excluded from the action must submit a signed, written request to the Settlement Administrator for exclusion. (Cole Decl. ¶ 32, Ex. C.)

/ / /

---

[1] The claim form will contain the estimated amounts of payment from Defendants to each Class Member. (Settlement Agreement ¶ 27.)

– 3 – 17-cv-0253 DMS (WVG)

## II.

## DISCUSSION

"Because class actions present the risk that the named parties will negotiate a bad deal for the absent members of the class, the Federal Rules of Civil Procedure require that any settlement that binds Class Members must be approved by a court." *Relente v. Viator, Inc.*, No. 12-cv-05868-JD, 2014 U.S. Dist. LEXIS 160350, at *5 (N.D. Cal. Nov. 14, 2014). "The Court's approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to Class Members, whether final approval is warranted." *Id.*

Preliminary approval of the settlement "requires conditionally approving the class[.]" *Relente*, 2014 U.S. Dist. LEXIS 160350, at *6; *see also Carr v. Tadin, Inc.*, No. 12-CV-3040 JLS JMA, 2014 WL 7497152, at *2 (S.D. Cal. Apr. 18, 2014) ("Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified.") (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The court must also "make a preliminary determination as to whether the proposed settlement is 'fair, reasonable, and adequate' pursuant to" Federal Rule of Civil Procedure 23(e)(2). *Carr*, 2014 WL 7497152, at *13. When the parties reach a settlement prior to formal class certification, as they did in this case, "settlement approval requires a 'higher standard of fairness.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1926 (9th Cir. 1998)). "The reason for more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel

has a duty to represent.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1027). Also, "[t]he dangers of collusion between class counsel and the defendant ... weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026.

**A.  Preliminary Class Certification**

"In order to obtain preliminary approval, the parties must demonstrate that the class action meets the requirements of Rule 23." *Boyd v. Avanquest N. Am. Inc*, No. 12-CV-04391-WHO, 2015 WL 4396137, at *2 (N.D. Cal. July 17, 2015) (citing *Amchem*, 521 U.S. at 614). In this case, Plaintiffs move for preliminary class certification under Rule 23(a) and (b)(3).

Rule 23(a) sets out four requirements for class certification. Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1.  <u>Federal Rule of Civil Procedure 23(a)</u>

The first requirement is numerosity. The putative Class Members include current and former non-exempt employees who were employed by Defendants as chauffeurs in San Francisco between March 14, 2014 and January 26, 2018, Los Angeles between March 14, 2014 and November 16, 2017, and San Diego between

October 1, 2015 and November 17, 2017. (Cole Decl. ¶ 3; Declaration of Daniel D. Bodell ("Bodell Decl.") ¶ 3.) Plaintiffs contend, and Defendants do not dispute, there are hundreds of putative Class Members, which make the class so large as to make joinder impracticable. This is sufficient to meet Plaintiff's preliminary showing of numerosity.

The second requirement is commonality. This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 389 (2011). As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 390 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 132 (2009)). Plaintiffs contend the commonality requirement is satisfied because there is a common legal issue of whether Class Members are entitled to unpaid wages as a result of Defendants' implementation of workplace policies and practices that violate state law. The underlying legal issue implicates the Class Members' claims as a whole and satisfies Plaintiff's preliminary showing of commonality.

The next requirement is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). Plaintiffs contend their claims are typical of other Class Members' because they are based on the same facts and the same legal theories. Like the Class Members, Plaintiffs allege they were subject to the same underlying policies and practices that violated state law, resulting in unpaid wages. The Court agrees, and thus finds that Plaintiffs have made a preliminary showing of typicality.

The fourth and final requirement is adequacy which asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. lnflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-Cal. Corp.,* 527 F.2d 1168, 1170 (9th Cir. 1975). Here, there is no evidence to suggest that Plaintiffs or their counsel have a conflict of interest with other Class Members. Plaintiffs assert they have the same interests as the class in maximizing recovery. Plaintiffs' counsel have substantial

experience prosecuting employment class actions. Under these circumstances, Plaintiffs have shown that the adequacy requirement is preliminarily satisfied.[2]

### 2. Federal Rule of Civil Procedure 23(b)(3)

Having made a preliminary showing on the requirements of Rule 23(a), the next issue is whether Plaintiffs have shown the requirements of Rule 23(b)(3) are met. *Amchem*, 521 U.S. at 614–15. Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). Rule 23(b)(3), as discussed, calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In adding the requirements of predominance and superiority to the qualifications for class certification, "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee notes).

Plaintiffs argue the predominance requirement is satisfied because questions common to the Class Members predominate over any individualized questions. Plaintiffs assert "[t]he central issue for every claimant is whether Defendants violated state … law in denying them all meal and rest periods." (Mem. of P. & A.

---

[2] A corollary requirement for class certification is ascertainability. Ascertainability looks to whether the class is sufficiently definite or adequately defined. *Turcios v. Carma Labs, Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014). That requirement is met in this case.

– 8 – 17-cv-0253 DMS (WVG)

in Supp. of Mot. at 12.) This issue is at the crux of this case, and is likely to predominate over any individual issues. Thus, Plaintiff has made a preliminary showing of predominance.

Turning to the superiority requirement, Rule 23(b)(3) provides a list of factors relevant to this requirement:

> (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). This inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair," such that the proposed class is superior to other methods for adjudicating the controversy. *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010).

Here, there is low incentive for the Class Members to bring separate actions given the limited amount of potential recovery and high costs of pursuing individual claims. Moreover, the common questions in this case make the class action procedure superior to the prosecution of individual cases. Because judicial economy achieved through common adjudication makes a class action a superior method for adjudicating the claims of the putative class, Plaintiff has made a preliminary showing of superiority.

**B. Preliminary Fairness Determination**

Having addressed the issue of preliminary certification of the class, the Court now turns to a preliminary consideration of whether the settlement is fair,

reasonable, and adequate. This determination involves a consideration of:

> "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement."

*Boyd*, 2015 WL 4396137, at *2 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA EMC, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)).

The Court initially turns to the first two factors, the strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation. Plaintiffs allege, in part, Defendants maintained practices and policies of failing to provide meal and rest periods and to pay overtime wages. (*See generally* FAC.) In order to succeed on the merits, Plaintiff would need to show Defendants' practices and policies were fraudulent. Defendants, however, deny any wrongdoing, (*see generally* Answer; Cole Decl. ¶ 32, Ex. C), and have several defenses to liability that could substantially reduce or potentially bar recovery for the Class Members.[3] (*See* Mem. of P. & A. in Supp. of Mot. at 8.) Plaintiffs acknowledge their recovery will depend in large part on credibility determination since there is a "lack of written evidence for the Class Members' missed meal and rest periods other than their declarations." (*Id.*) Moreover, Plaintiffs recognize the risks of non-certification and discretionary reduction of damages by the Court. In light of their desire to avoid

---

[3] Plaintiffs contend Defendant may likely argue "employers need only make breaks available and that Defendants had no obligation to ensure that breaks were actually taken[,]" and even if found liable, "the Class Members' damages were *de minimis*[.]" (Mem. of P. & A. in Supp. of Mot. at 8.)

further costly litigation and the risks of continued litigation, the parties ultimately elected to resolve their differences through arms-length negotiations with the help of a neutral third-party mediator. Under these circumstances, these factors weigh in favor of preliminary approval.

Next, the third factor is the risk of maintaining class status throughout the trial. As discussed above, Plaintiffs have made a preliminary showing that the requirements for class certification are met, and Defendants do not oppose a finding that the class elements are met for purposes of this settlement. Accordingly, this factor is neutral.

The fourth factor, the amount offered in settlement, "'is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class.'" *In re Celera Corp. Securities Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (quoting *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015)). Here, the Settlement Agreement provides for a Gross Settlement Fund of $1,050,000, which is approximately 43% of the maximum possible amount of recovery of $2,428,918.80. (Cole Decl. ¶ 21; Bodell Decl. ¶ 21.) It provides that an equitable formula will be applied to distribute payments to each participating Class Member based upon the number of workweeks the Class Member has worked during the relevant time period.[4] Based upon the parties' agreement that this amount

---

[4] The Court finds the incentive award to Plaintiffs, cost of the Settlement Administrator, and PAGA penalties appear reasonable, and thus, preliminary approves them. As for the attorneys' fees, Plaintiffs do not set forth adequate reasons justifying an amount totaling 28% of the Gross Settlement Fund, which is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Moreover, Plaintiffs has not attached any accounting of past costs to justify the $20,000 amount. Accordingly, the Court cannot undertake a preliminary

– 11 – 17-cv-0253 DMS (WVG)

provides adequate compensation for the class claims, the uncertainties the putative class faces in this case, and likely length of the proceedings before any recovery could be obtained, the Court finds the amount offered supports preliminary approval of the class settlement.

The fifth factor is the extent of discovery completed and the stage of the proceedings. The parties had entered into the discovery phase of the case when the case settled. Although it is unclear how much discovery the parties had completed, Plaintiffs contend the parties engaged in sufficient discovery to assess the strengths and weaknesses of their respective positions. (*See* Cole Decl. ¶¶ 5–6; Bodell Decl. ¶¶ 5–6.) Accordingly, this factor weighs in favor of preliminary approval.

The next factor is the experience and views of counsel. As addressed above, counsel appear to be sufficiently experienced in these matters, and they believe the settlement is fair, reasonable, and adequate. (Cole Decl. ¶ 23; Bodell Decl. ¶ 23.) Therefore, this factor weighs in favor of preliminary approval.

The final two factors are the presence of a governmental participant and the reaction of Class Members to the proposed settlement. There is no governmental participant in this case. Therefore this factor is neutral. The final factor also does not apply at this stage as the class has yet to receive notice of the settlement.

Considering the factors discussed above, the Court finds Plaintiffs have met the requirements for preliminary certification of the class and approval of the settlement.

## III.
## CONCLUSION

---

evaluation of the attorneys' fees and costs at this time, and therefore, will revisit these requests at the time the parties seek final approval of the settlement.

For the reasons set out above, the Court grants Plaintiffs' motion for preliminary approval of the settlement in this case. This Preliminary Approval Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meaning as set forth in the Settlement Agreement.

**IT IS ORDERED** as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

2. Pursuant to Federal Rule Civil Procedure 23(b)(3), the Court hereby conditionally certifies the Settlement Class for settlement purposes only. The Settlement Class is defined as follows:

> All California Chauffeurs who worked for Defendants Harrison Global, LLC and/or MTG Acquisitions, LLC from March 14, 2014 to January 26, 2018 (San Francisco); March 14, 2014 to November 16, 2017 (Los Angeles); and October 1, 2015 to November 17, 2017 (San Diego), respectively

3. Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies Plaintiffs Mark Huddlestun and Robert Benson as Class Representatives and Plaintiffs' counsel as Class Counsel solely for purposes of settlement.

4. The Court hereby approves, as to form and content, the Notice attached as Exhibit C to Declaration of Scott Cole and the Notice Program set forth in paragraphs 27 through 30 of the Settlement Agreement. The Court finds that the Notice meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and (e).

5. Pursuant to the Settlement Agreement, within five (5) business days of the entry of this Preliminary Approval Order, Defendants will provide the Settlement Administrator the best information in its possession, custody, or control with respect

to the names, social security numbers, last known addresses, home telephone number, and e-mail address for each Class Member, and the dates of service and number of workweeks that each Class Member worked for Defendants during the Settlement Period. The Settlement Administrator shall keep and maintain the information as confidential and shall only use the Social Security numbers for purposes of this Settlement Agreement, i.e. to locate the Class Members.

6. The Settlement Administrator shall send the Class Notice Package to Class Members by first class mail within ten (10) business days of the entry of this Preliminary Approval Order. Class Members shall not be required to pay return postage on the Claim Form and the cost of such postage shall be included in the fees and costs of the Settlement Administrator. A valid Claim Form must be postmarked not more than thirty (30) business days after the date the Class Notice Package is mailed to the Class Members (or not more than ten (10) business days after the date the Class Notice Package is re-mailed).

7. Class Members may choose to exclude themselves from the Settlement by submitting a written objection complying with the specifications in the Notice no later than thirty (30) business days after the date the Class Notice Package is mailed to the Class Members (or not more than ten (10) business days after the date the Class Notice Package is re-mailed).

8. Class Members may object to the Settlement by mailing a written objection complying with the specifications in the Notice no later than thirty (30) business days after the date the Class Notice Package is mailed to the Class Members (or not more than ten (10) business days after the date the Class Notice Package is re-mailed). The Settlement Administrator shall promptly forward any objections received to Class Counsel and Defendants' counsel.

9. Class Members may enter an appearance through counsel of their own choosing and at their own expense or may appear individually and show cause, if they have any facts or arguments to present, as to: (a) why the proposed settlement of the Action as set forth in the Settlement Agreement should or should not be approved as fair, reasonable, and adequate; and (b) why the final approval order and judgment should or should not be entered on the proposed Settlement Agreement. If any Class Member seeks to appear at the hearing, he or she shall file a notice of appearance with the Court and serve Class Counsel and Defendants' counsel fifteen (15) days before the Final Approval Hearing.

10. No later than twenty-one (21) days prior to the Final Approval Hearing, the parties shall file a Motion for Final Approval of Class Action Settlement. The Motion shall include and address any objections received. In addition to the class certification and settlement fairness factors, the Motion shall address the number of Class Members who have opted out and the corresponding number of claims.

11. No later than twenty-one (21) days prior to the Final Approval Hearing, the parties shall file a sworn declaration evidencing compliance with the provisions of the Settlement Agreement as it relates to providing Notice.

12. No later than twenty-one (21) days prior to the Final Approval Hearing, Class Counsel shall file an application for attorneys' fees and costs. Class Counsel shall provide documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled. Class Counsel should be prepared to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

13. Pursuant to Rule 23(e), the Final Approval Hearing will be held before

1 | this Court at Courtroom 13A, 333 West Broadway, San Diego, CA 92101 on **February 22, 2019**, at **1:30 p.m.**, to determine: (a) whether the proposed settlement of the Action on the terms and conditions provided in the Settlement Agreement are fair, reasonable, and adequate, and (b) whether a final approval order and judgment should be entered herein. The Court may adjourn or continue the Final Approval Hearing without further notice to the Settlement Class.

14. After the Final Approval Hearing, the Court may enter a Final Order and Judgment in accordance with the Settlement Agreement that will adjudicate the rights of the Settlement Class Members (as defined in the Settlement Agreement) with respect to the claims being settled.

15. In the event the Settlement Agreement is not consummated for any reason, the conditional class certification shall be of no further force or effect.

**IT IS SO ORDERED.**

Dated: August 7, 2018

_____
Hon. Dana M. Sabraw
United States District Judge